**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2145-23

STATE TROOPERS
FRATERNAL ASSOCIATION,

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
DIVISION OF STATE POLICE,

    Defendant-Respondent.

_____

Argued March 18, 2025 – Decided April 4, 2025

Before Judges Smith and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2396-23.

Lauren Sandy argued the cause for appellant (Crivelli, Barbati, and DeRose, LLC, attorneys; Lauren Sandy, of counsel and on the briefs).

Jana R. DiCosmo, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Jana R. DiCosmo, on the brief).

PER CURIAM

Plaintiff State Troopers Fraternal Association (STFA) appeals a trial court order denying its motion to vacate an arbitration award dismissing its grievance against the State of New Jersey, Division of State Police (NJSP), contending the NJSP violated the parties' collective bargaining agreement (CBA) in calculating overtime rates. We affirm.

I.

We derive the salient facts from the record. The STFA filed a grievance on behalf of all NJSP Troopers, alleging the NJSP improperly calculated their hourly overtime rate under Article V, section E, paragraph three of the CBA (the OT Provision), utilizing the actual number of working days in each fiscal year, rather than 2,080 annual hours. The OT Provision reads as follows:

> All overtime shall be compensated as paid compensation at the time and one-half (1-1/2) rate, (the overtime rate shall be base plus maintenance divided by 2,080 x 1.5), unless the employee, at said employee's sole option, elects to take compensation for overtime in compensatory time off (C.T.O.) which shall accumulate in a C.T.O. bank. Compensatory time compensation in the C.T.O. bank shall accumulate at time and one-half (one and one-half hours banked for each hour of overtime worked in quarter hour units).

When the NJSP denied the grievance, the STFA requested arbitration. An arbitration hearing was held, with the arbitrator framing the issue as: "[d]id the

[NJSP] violate the [CBA] when it used the annual State of New Jersey-Department of [t]he Treasury Circulars ([t]reasury [c]irculars) to calculate the [o]vertime [r]ate instead of language contained in the [a]greement at Article V: E. (3)?"

At the arbitration hearing the STFA proffered the testimony of Steven Kuhn, STFA's Vice President. Kuhn testified the 2,080[1] multiplier has been in the parties' CBA since the 1987-1990 contract and has appeared in every agreement thereafter. Kuhn stated the NJSP calculated overtime compensation during the fiscal year 2020 by utilizing 2,096 as the multiplier, which reduced overtime pay by sixty-two cents an hour.

The NJSP proffered the testimony of two witnesses: (1) Zachary Burkhalter, the payroll supervisor for the Department of Treasury, Office of Management and Budget; and (2) Stacey Monte, the Human Resource Manager who oversees payroll operations for NJSP. Burkhalter testified that the treasury circulars mandate state employees be paid according to the number of fiscal year working days, which can vary between 260, 261, and 262 days, where the employing agency, such as the Division of State Police, utilizes the Treasury's

_____

[1] This figure is based on 260 working days in the fiscal year, with twenty-six pay periods and 8 hours in a working day.

A-2145-23

centralized payroll. Monte's testimony was consistent with that of Burkhalter on the material issues.

The arbitrator denied the STFA's grievance as unsupported by the evidence, finding:

> it [is] clear from the record evidence that [NJSP was] correct in arguing that the intent of the parties in 1987 was that the [a]greement's reference in 1987 to 2080 as the basis for determining the divisor to be used in computing overtime was merely illustrative and descriptive, instead of prescriptive. While the words in the [a]greement's language may at first reading appear to require use of 2080 in determining the divisor, as [STFA] argues, the record evidence is ample that the parties, until [STFA] first raised the prescriptive issue in 2019, had used other appropriate divisors for over [thirty] years, both from the outset in the first years after 1987, and in almost three of every four years thereafter, thereby indicating forcefully that both [NJSP and STFA], until 2019, had consistently previously interpreted the [a]greement's words as illustrative and descriptive, not prescriptive.

The arbitrator found STFA's "reliance on the language being plainly and simply clear, as it might . . . first appear, [was] swept aside by the weight of the record evidence that establishe[d] the manner in which both parties had actually conducted their relationship otherwise over the three decades preceding [STFA's] first raising the prescriptive issue in 2019."

4

The STFA filed an order to show cause (OTSC) with the Law Division seeking to vacate the arbitration award. In denying the OTSC, the trial court determined the arbitrator's conclusion was "reasonably debatable" and did not meet the standard for setting aside the arbitration award.

The STFA appealed, contending the arbitration award must be vacated because it is not reasonably debatable. The STFA posits the arbitrator "disregarded the plain and unambiguous contract language[,] . . .[and] committed a mistake of law" in failing to confine his determination to the four corners of the agreement, and considering the parties' past practice.

We consider the STFA's arguments in turn.

II.

We begin by acknowledging the scope of our review. The decision to grant or deny a motion to vacate an arbitration award is a matter of law which we review de novo. See Yarborough v. State Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018) (citing Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013)). A trial court's review of an arbitration award is limited. Strickland v. Foulke Mgmt. Corp., 475 N.J. Super. 27, 38 (App. Div. 2023). Accordingly, we apply "an extremely deferential review when a party to a [CBA] has sought to vacate an arbitrator's award."

Policemen's Benevolent Ass'n, Loc. No. 11 v. City of Trenton, 205 N.J. 422, 428 (2011).

N.J.S.A. 2A:24-8 circumscribes the following statutory grounds upon which an arbitration award may be vacated:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

"The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015) (citing Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris, 100 N.J. 383, 390 (1985)). To ensure the finality and the expeditious and inexpensive nature of binding arbitration, there is "a strong preference for judicial confirmation of arbitration awards," particularly in

public-sector labor disputes. Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201 (2013) (quoting Middletown Twp. PBA Loc. 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)).

"Generally, when a court reviews an arbitration award, it does so mindful of the fact that the arbitrator's interpretation of the contract controls." Id. at 201. Even where an arbitrator's interpretation "was not the only one that could have flowed from the [a]greement and may not even have been the best one[,]" the award will still be confirmed if the conclusion was reasonably debatable. Policemen's Benevolent Ass'n, Loc. No. 11, 205 N.J. at 425. Under this standard, a court reviewing an arbitration decision "may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's [interpretation]." Borough of E. Rutherford, 213 N.J. at 201-02 (quoting Middletown Twp. PBA Loc. 124, 193 N.J. at 11) (internal quotation marks omitted).

To determine "undue means," "[t]he judicial inquiry must consider more than whether a mere mistake occurred." Minkowitz, 433 N.J. Super. at 150. Instead, the

> formulation requires that the arbitrator[] must have clearly intended to decide according to law, must have clearly mistaken the legal rule, and that mistake must appear on the face of the award. In addition, the error,

A-2145-23

to be fatal, must result in a failure of intent or be so gross as to suggest fraud or misconduct.

[Id. at 150-51 (alteration in original) (quoting Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 357 (1994) (internal citations and internal quotation marks omitted)).]

"[A]n arbitrator's failure to follow the substantive law may . . . constitute 'undue means' which would require the award to be vacated." In re City of Camden, 429 N.J. Super. 309, 332 (App. Div. 2013) (quoting Jersey City Educ. Ass'n, Inc. v. Bd. of Educ. of Jersey City, 218 N.J. Super. 177, 188 (App. Div. 1987)). Undue means does "not include situations . . . where the arbitrator bases his decision on one party's version of the facts, finding that version to be credible." Loc. No. 153, Off. & Pro. Emps. Int'l Union v. Tr. Co. of N.J., 105 N.J. 442, 450 n.1 (1987).

Arbitrators are bound by the four corners of an agreement where its terms are unambiguous but may look to additional provisions or other extrinsic evidence where terms are ambiguous or undefined. Policemen's Benevolent Ass'n, Loc. No. 11, 205 N.J. at 430 (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 277 (2010)); see also Hall v. Bd. of Educ. of Twp. of Jefferson, 125 N.J. 299, 305-06 (1991) ("If contract terms are unspecific or vague, extrinsic evidence may be used to shed light on the mutual

8                                                                    A-2145-23

understanding of the parties."). "The past practice of the contracting parties is entitled to 'great weight' in determining the meaning of ambiguous or doubtful contractual terms." Hall, 125 N.J. at 306 (quoting Kennedy v. Westinghouse Elec. Corp., 16 N.J. 280, 294 (1954)).

Such a construction will meet the reasonably debatable standard if it is "'justifiable' or 'fully supportable in the record[.]'" Policemen's Benevolent Ass'n, Loc. No. 11, 205 N.J. at 431 (quoting Kearny PBA Loc. No. 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)). However, when an arbitrator ignores "the clear and unambiguous language of the agreement" they will be found to exceed their authority and, therefore, there will be grounds for vacatur under N.J.S.A. 2A:24-8(d). See City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist. of City of Newark, 311 N.J. Super. 300, 312 (App. Div. 1998).

Applying these standards, we discern no error in the trial court's denial of STFA's motion to vacate the arbitration award, concluding the arbitrator's interpretation of the agreement is plausible and, thus, reasonably debatable. The arbitrator found the OT Provision to be ambiguous and looked to extrinsic evidence to determine the parties' intent to inform the arbitrator's interpretation.

Here, the OT Provision parenthetical can be interpreted in multiple ways. One interpretation views the parenthetical as a mandatory mathematical

A-2145-23

equation for the calculation of overtime pay strictly using the 2,080 multiplier. This interpretation arguably conflicts with the prior reference to "time and one [-]half rate" in the same CBA section, since the term "time" fluctuates depending on how many hours per year the employee works. Another interpretation views the parenthetical as providing merely an example and viewing the multiplier as variable, depending on the actual number of working days in a year.

Both interpretations are arguably reasonable based on the proofs at the arbitration hearing. We conclude the CBA is ambiguous, since it is susceptible to more than one interpretation, and the arbitrator's consideration of extrinsic evidence was permissible because neither party was able to produce a witness who could testify to the intent at the time of the formation of the CBA.

The evidence at the arbitration hearing established that in 1987, when the 2,080 reference was first included in the agreement, there were 261 working days in the fiscal year and, therefore, the multiplier for overtime calculations would have been 2,088. Rather than using the 2,080 multiplier for 1987, the agreement instead references a multiplier for a 260 working day fiscal year leading to a plausible conclusion the multiplier used in the parenthetical was only an example of a calculation rather than a specific and mandatory CBA term.

A-2145-23

NJSP's past practice of calculating the overtime rate plausibly reflects the parties' interpretation of the CBA as consistent with the arbitrator's decision. Since 1987, the NJSP calculated the overtime rate based on the number of working days in the given fiscal year—using the 2,080, 2,088, and 2,096 multipliers depending on the number of actual working days in the fiscal year. Burkhalter's testimony that the treasury circulars mandate state employee salaries be paid according to the actual number of working days supports the arbitrator's interpretation the CBA parenthetical is "illustrative and descriptive, instead of prescriptive."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division